UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL SANTINI,<br><br>Plaintiff,<br><br>v.<br><br>WELLS GROUP LLC,<br><br>Defendant. | Civil Action Docket No: |

**PLAINTIFF'S COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Michael Santini ("Plaintiff"), by and through undersigned counsel, complains against Wells Group, LLC ("Defendant") as follows:

**The Nature of the Action**

1. Plaintiff brings this action for breach of contract and for violation of the Maine Unfair Trade Practices Act. The claims arise from Defendant's breach of a purchase and sale agreement dated February 27, 2004 entered into between Plaintiff and Defendant involving the sale of real property (the "Agreement"). Plaintiff seeks, among other remedies, specific performance by the Defendant of the terms of the Agreement and the sale of the condominium unit located at 1413 Route One, Wells, Maine (the "Condominium") to the Plaintiff. Plaintiff hereby requests a trial by jury.

**Parties**

2. Plaintiff is an individual with a principal residence located at 32 Hamlin Avenue, Medford, Massachusetts.

3. Defendant is a Maine Limited Liability Company with its principal place of business located at P.O. Box 369, Wells, Maine.

**Jurisdiction and Venue**

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between parties of diverse citizenship.

5. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial part of the events giving rise to the claims set forth herein occurred in Wells, Maine.

**Factual Allegations**

6. On February 27, 2004, Plaintiff and Defendant entered into the Agreement. A true and correct copy of the Agreement is attached hereto as Exhibit "A".

7. Pursuant to Paragraph 2 of the Agreement, Defendant agreed to convey the Condominium to Plaintiff. Paragraph 2 states in pertinent part: "Seller agrees to sell and Buyer agrees to buy . . . the property maintained in municipality of Wells, County of York, State of Maine, located at 1413 Route One [unit] #17 . . . [.]"

8. Upon information and belief, the closing date relating to the sale of the Condominium was intentionally left blank by the parties to the Agreement due to the fact that the Condominium had not been constructed as of the date of the Agreement.

9. Despite the closing date being left blank, on August 26, 2004, Defendant notified Plaintiff for the first time that closing had to occur within five days.

10. Due to ordinary timing issues, it was impossible for Plaintiff to perform the closing within the timeframes demanded by the Defendant.

11. On August 31, 2004, counsel for the Plaintiff notified Defendant that Plaintiff would be forced to pursue legal action unless the Defendant provided the

Plaintiff with a reasonable period of time to obtain the necessary financing in relation to the purchase of the Condominium (the "August 31st Letter"). A true and correct copy of the August 31st Letter is attached hereto as Exhibit "B".

12. The Defendant failed to comply with the requests set forth in the August 31st Letter.

**Count I**
**(Breach of Contract)**

13. Plaintiff repeats and realleges paragraphs 1-13 above, as though fully stated herein.

14. Plaintiff and Defendant entered into the Agreement whereby Defendant agreed to convey the Condominium to Plaintiff.

15. The Agreement does not expressly provide a closing date relating to the sale of the Condominium.

16. Premised on this absence of an expressly agreed upon date for performance, Plaintiff was contractually entitled to a reasonable closing date.

17. Defendant breached the Agreement by failing to provide the Plaintiff with reasonable notice of the closing date.

18. Plaintiff has fully performed all of his obligations under the Agreement.

19. Additionally, the Maine Condominium Act imposes an obligation of good faith in the performance of every contract governed by the Maine Condominium Act.

20. The Defendant breached the good faith requirement by failing to provide the Plaintiff with reasonable notice of the closing date.

21. Premised on the aforementioned breaches, Plaintiff demands specific performance of the terms of the Agreement and/or damages in an amount to fairly and

reasonably compensate Plaintiff for the actions of the Defendant.

**WHEREFORE**, Plaintiff demands:

(a) specific performance of the terms of the Agreement and/or damages in the amount to fairly and reasonably compensate Plaintiff for the actions of the Defendant;

(b) any and all costs and expenses involved in bringing this action; and

(c) such other and further relief as is just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated this 3rd day of September, 2004.

/s/ Lee H. Bals
Lee H. Bals, Esq.
Jennie L. Clegg, Esq.

Marcus, Clegg & Mistretta, P.A.
100 Middle Street
Portland, ME 04101
(207) 828-8000

Attorneys for Plaintiff
Michael Santini

EXHIBIT A

# PURCHASE AND SALE AGREEMENT

FEBRUARY 27TH, 2004 | 3/3/04, ______ Effective Date
Effective Date is defined in Paragraph 24 of this Agreement.

1. PARTIES: This Agreement is made between MICHAEL SANTINI (hereinafter called "Buyer") and WELLS GROUP LLC (hereinafter called "Seller").

2. DESCRIPTION: Subject to the terms and conditions hereinafter set forth, Seller agrees to sell and Buyer agrees to buy (all ☐ part of ☐; If "part of" see paragraph 26 for explanation) the property situated in municipality of WELLS, County of YORK, State of Maine, located at 1413 ROUTE ONE [illegible] and described in deed(s) recorded at said County's Registry of Deeds Book(s) ______, Page(s) ______.

3. FIXTURES: The Buyer and Seller agree that all fixtures, including but not limited to existing storm and screen windows, shades and/or blinds, shutters, curtain rods, built-in appliances, heating sources/systems including gas and/or kerosene-fired heaters and wood stoves, and electrical fixtures are included with the sale except for the following: ______

Seller represents that all mechanical components of fixtures will be operational at the time of closing except: N/A

4. PERSONAL PROPERTY: The following items of personal property are included with the sale at no additional cost, in "as is" condition with no warranties: ______
Seller represents that such items shall be operational at the time of closing, except: ______

5. CONSIDERATION: For such Deed and conveyance Buyer is to pay the sum of ....... PRICE $ 184,999
of which ....... DEPOSIT $ 10,000
is included herewith as an earnest money deposit, and an additional amount of ....... DEPOSIT $ ______
will be paid ______ ....... BALANCE DUE $ 174,999
The balance due amount is to be paid by certified or bank check, upon delivery of the Deed.

This Purchase and Sale Agreement is subject to the following conditions:

6. EARNEST MONEY/ACCEPTANCE: RIVERS BY THE SEA ("Agency") shall hold said earnest money and act as escrow agent until closing; this offer shall be valid until MAY 25TH 2004 (date) ______ ☐ AM ☐ PM; and, in the event of non-acceptance, this earnest money shall be returned promptly to Buyer. Withdrawals of offers and counteroffers will be effective upon communication, verbally or in writing, to the other party or their agents. In the event that the Agency is made a party to any lawsuit by virtue of acting as escrow agent, Agency shall be entitled to recover reasonable attorney's fees and costs which shall be assessed as court costs in favor of the prevailing party.

7. TITLE AND CLOSING: A deed, conveying good and merchantable title in accordance with the Standards of Title adopted by the Maine Bar Association shall be delivered to Buyer and this transaction shall be closed and Buyer shall pay the balance due and execute all necessary papers on ______ (closing date) or before, if agreed in writing by both parties. If Seller is unable to convey in accordance with the provisions of this paragraph, then Seller shall have a reasonable time period, not to exceed 30 days, from the time Seller is notified of the defect, unless otherwise agreed to by both Buyer and Seller, to remedy the title, after which time, if such defect is not corrected so that there is a merchantable title, Buyer may, at Buyer's option, withdraw said earnest money and be relieved from all obligations. Seller hereby agrees to make a good-faith effort to cure any title defect during such period.

8. DEED: The property shall be conveyed by a WARRANTY deed, and shall be free and clear of all encumbrances except covenants, conditions, easements and restrictions of record which do not materially and adversely affect the continued current use of the property.

9. POSSESSION, OCCUPANCY, AND CONDITION: Unless otherwise agreed in writing, possession and occupancy of premises, free of tenants and occupants, shall be given to Buyer immediately at closing. Said premises shall then be broom clean, free of all possessions and debris, and in substantially the same condition as at present, excepting reasonable use and wear. Buyer shall have the right to view the property within 24 hours prior to closing for the purpose of determining that the premises are in substantially the same condition as on the date of this Agreement.

10. RISK OF LOSS, DAMAGE, DESTRUCTION AND INSURANCE: Prior to closing, risk of loss, damage, or destruction of premises shall be assumed solely by the Seller. Seller shall keep the premises insured against fire and other extended casualty risks prior to closing. If the premises are damaged or destroyed prior to closing, Buyer may either terminate this Agreement and be refunded the earnest money, or close this transaction and accept the premises "as-is" together with an assignment of the insurance proceeds relating thereto.

11. PRORATIONS: The following items, where applicable, shall be prorated as of the date of closing: collected rent, association fees, (other) ______________________________________________________________. The day of closing is counted as a Seller day. Metered utilities such as electricity, water and sewer will be paid through the date of closing by Seller. Fuel in tank (shall ☐ shall not ☐) be paid by Buyer (cash price as of date of closing). Real estate taxes shall be prorated as of the date of closing (based on municipality's fiscal year). Seller is responsible for any unpaid taxes for prior years. If the amount of said taxes is not known at the time of closing, they shall be apportioned on the basis of the taxes assessed for the preceding year with a reapportionment as soon as the new tax rate and valuation can be ascertained, which latter provision shall survive closing. Buyer and Seller will each pay their transfer tax as required by State of Maine.

12. PROPERTY DISCLOSURE FORM: Buyer acknowledges receipt of Seller's Property Disclosure Form and is encouraged to seek information from professionals regarding any specific issue or concern.

13. INSPECTIONS: Buyer is encouraged to seek information from professionals regarding any specific issue or concern. Agent makes no warranties regarding the condition, permitted use or value of Sellers' real or personal property. This Agreement is subject to the following inspections, with results being satisfactory to Buyer:

| TYPE OF INSPECTION | YES | NO | RESULTS REPORTED TO SELLER | TYPE OF INSPECTION | YES | NO | RESULTS REPORTED TO SELLER |
|---|---|---|---|---|---|---|---|
| a. General Building | ___ | ___ | Within ______ days | g. Mold | ___ | ___ | Within ______ days |
| b. Environmental Scan | ___ | ___ | Within ______ days | h. Lead Paint | ___ | ___ | Within ______ days |
| c. Sewage Disposal | ___ | ___ | Within ______ days | i. Arsenic Treated Wood | ___ | ___ | Within ______ days |
| d. Water Quality (including but not limited to radon, arsenic, lead, etc.) | ___ | ___ | Within ______ days | j. Pests | ___ | ___ | Within ______ days |
| | | | | k. Pool | ___ | ___ | Within ______ days |
| e. Water Quantity | ___ | ___ | Within ______ days | l. Zoning | ___ | ___ | Within ______ days |
| f. Air Quality (including but not limited to asbestos, radon, etc.) | ___ | ___ | Within ______ days | m. Code Conformance | ___ | ___ | Within ______ days |
| | | | | n. Other ________ | ___ | ___ | Within ______ days |

All inspections will be done by inspectors chosen and paid for by Buyer. If the result of any inspection or other condition specified herein is unsatisfactory to Buyer, Buyer will declare the Agreement null and void by notifying Seller in writing within the specified number of days, and any earnest money shall be returned to Buyer. If the result of any inspection or other condition specified herein is unsatisfactory to Buyer, and Buyer wishes to pursue remedies other than voiding the Agreement, Buyer must do so to full resolution within the time period set forth above; otherwise this contingency is waived. If Buyer does not notify Seller that an inspection is unsatisfactory within the time period set forth above, this contingency is waived by Buyer. In the absence of inspection(s) mentioned above, Buyer is relying completely upon Buyer's own opinion as to the condition of the property.

14. HOME SERVICE CONTRACTS: At closing, the property ☐ will ☐ will not be covered by a Home Warranty Insurance Program to be paid by ☐ Seller ☐ Buyer at a price of $ ______________________________.

15. FINANCING: This Agreement is ☐ is not ☐ subject to Financing. If subject to Financing:

a. This Agreement is subject to Buyer obtaining a ____________________ loan of ______________ % of the purchase price, at an interest rate not to exceed ______________ % and amortized over a period of ________________ years.

b. Buyer to provide Seller with letter from lender showing that Buyer has made application and, subject to verification of information, is qualified for the loan requested within __________ days from the Effective Date of the Agreement. If Buyer fails to provide Seller with such letter within said time period, Seller may terminate this Agreement and the earnest money shall be returned to Buyer.

c. Buyer to provide Seller with loan commitment letter from lender showing that Buyer has secured the loan commitment within ____________________ days of the Effective Date of the Agreement. If Buyer fails to provide Seller with this loan commitment letter within said time period, Seller may deliver notice to Buyer that this Agreement is terminated three business days after delivery of such notice unless Buyer delivers the loan commitment letter before the end of the three-day period. If the Agreement is terminated under the provision of this sub-paragraph, the earnest money shall be returned to Buyer.

d. Buyer hereby authorizes, instructs and directs its lender to communicate the status of the Buyer's loan application to Seller or Seller's agent.

e. After (b) and (c) are met, Buyer is obligated to notify Seller in writing if the lender notifies Buyer that it is unable or unwilling to proceed under the terms of the loan commitment. Any failure by Buyer to notify Seller within 48 hours of receipt by Buyer of notice from the lender shall be a default under this Agreement.

f. Buyer agrees to pay no more than ______ points. Seller agrees to pay $ ____________________ toward Buyer's pre-paids, points and/or closing costs.

g. Buyer's ability to obtain financing is ☐ is not ☐ subject to the sale of another property. See addendum Yes ☐ No ☐.

h. Buyer may choose to pay cash instead of obtaining financing. If so, buyer shall notify seller in writing and the Agreement shall no longer be subject to financing, and Seller's right to terminate pursuant to the provisions of paragraph 15 shall be void.

16. AGENCY DISCLOSURE: Buyer and Seller acknowledge they have been advised of the following relationships:

Nancy Donahue of Rivers By The Sea is a ☒ Seller Agent ☐ Buyer Agent ☐ Disc Dual Agent ☐ Transaction Broker
Licensee / Agency

Mary Rivers of Rivers By The Sea is a ☒ Seller Agent ☐ Buyer Agent ☐ Disc Dual Agent ☐ Transaction Broker
Licensee / Agency

If this transaction involves Disclosed Dual Agency, the Buyer and Seller acknowledge the limited fiduciary duties of the agents and hereby consent to this arrangement. In addition, the Buyer and Seller acknowledge prior receipt and signing of a Disclosed Dual Agency Consent Agreement.

17. MEDIATION: Any dispute or claim arising out of or relating to this Agreement or the property addressed in this Agreement shall be submitted to mediation in accordance with the Maine Residential Real Estate Mediation Rules. Buyer and Seller are bound to mediate in good faith and pay their respective mediation fees. If a party does not agree first to go to mediation, then that party will be liable for the other party's legal fees in any subsequent litigation regarding that same matter in which the party who refused to go to mediation loses in that subsequent litigation. This clause shall survive the closing of the transaction. Earnest money disputes are subject to release options in license law and the default clause contained herein.

18. DEFAULT: In the event of default by the Buyer, Seller may employ all legal and equitable remedies, including without limitation, termination of this Agreement and forfeiture by Buyer of the earnest money. In the event of a default by Seller, Buyer may employ all legal and equitable remedies, including without limitation, termination of this Agreement and return to Buyer of the earnest money. Agency acting as escrow agent has the option to require written releases from both parties prior to disbursing the earnest money to either Buyer or Seller. In the absence of signed releases, earnest money deposit disputes will be submitted to small claims court if the dispute meets the criteria for being handled by that jurisdiction.

19. PRIOR STATEMENTS: Any representations, statements and agreements are not valid unless contained herein. This Agreement completely expresses the obligations of the parties.

20. HEIRS/ASSIGNS: This Agreement shall extend to and be obligatory upon heirs, personal representatives, successors, and assigns of the Seller and the assigns of the Buyer.

21. COUNTERPARTS: This Agreement may be signed on any number of identical counterparts, such as a faxed copy, with the same binding effect as if the signatures were on one instrument. Original or faxed signatures are binding.

22. ADDENDA: Lead Paint - Yes ☐ No ☐; Other - Yes ☐ No ☐
Explain: ____________

23. SHORELAND ZONE SEPTIC SYSTEM: Seller represents that the property does ☐ does not ☐ contain a septic system within the Shoreland Zone. If the property does contain a septic system located in the Shoreland Zone, Seller agrees to provide certification at closing indicating whether the system has/has not malfunctioned within 180 days prior to closing.

24. EFFECTIVE DATE: This Agreement is a binding contract when signed by both Buyer and Seller and when that fact has been communicated to Buyer and Seller or to their agents. Agent is authorized to complete Effective Date on Page 1 of this Agreement. Except as expressly set forth to the contrary, the use of "by (date)" or "within __x__ days" shall refer to calendar days being counted from the Effective Date as noted on Page 1 of the Agreement, beginning with the first day after the Effective Date and ending at 5:00 p.m. Eastern Time on the last day counted.

25. CONFIDENTIALITY: Buyer and Seller understand that the terms of this Agreement are confidential but authorize the disclosure of the information herein to the agents, attorneys, lenders, appraisers, inspectors and others involved in the transaction necessary for the purpose of closing this transaction. Buyer and Seller authorize the lender and/or closing agent preparing the closing statement to release a copy of the closing statement to the parties and their agents prior to, at and after the closing.

26. OTHER CONDITIONS:

A copy of this Agreement is to be received by all parties and, by signature, receipt of a copy is hereby acknowledged. If not fully understood, contact an attorney. This is a Maine contract and shall be construed according to the laws of Maine.

Seller acknowledges that State of Maine law requires buyers of property owned by non-resident sellers to withhold a prepayment of capital gains tax unless a waiver has been obtained by Seller from the State of Maine Bureau of Taxation.

Buyer acknowledges that Maine law requires continuing interest in the property and any back up offers to be communicated by the listing agent to the Seller.

Buyer's Mailing address is 32 Hamlin Ave Medford MA 02155

X [signature] BUYER X 017 58-9817 SS# OR TAXPAYER ID#

X BUYER X SS# OR TAXPAYER ID#

Seller accepts the offer and agrees to deliver the above-described property at the price and upon the terms and conditions set forth and agrees to pay agency a commission for services as specified in the listing agreement.

Seller's Mailing address is ______

SELLER DATE SS# OR TAXPAYER ID#

SELLER DATE SS# OR TAXPAYER ID#

Offer reviewed and refused on ______ day of ______ , ______

SELLER SELLER

COUNTER-OFFER: Seller agrees to sell on the terms and conditions as detailed herein with the following changes and/or conditions:

The parties acknowledge that until signed by Buyer, Seller's signature constitutes only an offer to sell on the above terms and the offer will expire unless accepted by Buyer's signature with communication of such signature to Seller by (date) ______ (time) ______ AM ______ PM.

SELLER DATE SELLER DATE

The Buyer hereby accepts the counter offer set forth above.

BUYER DATE BUYER DATE

EXTENSION: The time for the performance of this Agreement is extended until ______ DATE

BUYER DATE SELLER DATE

BUYER DATE SELLER DATE

Maine Association of REALTORS®/ Rev. 2004
All Rights Reserved. © Copyright 2004.

MARCUS,
CLEGG
&
MISTRETTA
—P.A.—
ATTORNEYS

JENNIE L. CLEGG

100 MIDDLE STREET
EAST TOWER
PORTLAND, ME 04101

tel: 207-828-8000
800-806-9242

fax: 207-541-2101
800-806-8676

e mail: jclegg@mcm-law.com
http://www.mcm-law.com

August 31, 2004

EXHIBIT
B

VIA TELECOPY

Joseph G. Carleton, Jr., Esq.
P.O. Box 369
Wells, Maine 04090

RE: Unit #17, 1413 Route One, Wells, Maine (the "Unit")

Dear Mr. Carleton:

This office is counsel to Michael Santini ("Buyer") in connection with that certain Purchase and Sale Agreement dated March 3, 2004, relating to the Unit (the "Contract"). I understand that you are counsel to Wells Group, LLC ("Seller"), the other party to the Contract.

As I trust that you already know, the Contract does not specify a closing date. Indeed, given that the Contract was signed before construction began, the Contract could not specify a closing date since the parties did not know when the Unit would be ready for sale. Since this term is absent from an otherwise valid contract, Maine law will impose a "reasonable" time to close.

On August 26, 2004, Seller advised the Buyer that if he did not close by August 31, 2004, the Contract would be terminated and the Unit would be listed for sale at a much higher price than that called for by the Contract. This ultimatum was issued before the Unit could even have been sold pursuant to applicable law. The Buyer promptly advised Seller that he could not be ready in what amounted to two business days but that he would be ready, willing and able to close within two weeks. Seller continued to insist that if there was no closing by today, the Contract would be terminated.

There is nothing in the Contract or in Maine law that would give the Seller the right to unilaterally establish an unreasonable deadline to close and/or terminate the Contract when the arbitrary deadline is not met. In fact, the actions of the Seller violate both the Maine Condominium Act as well as the Maine Unfair Trade Practices Act.

The purpose of this letter is to advise you and the Seller that the Buyer will be ready, willing and able to perform under the Contract by September 27, 2004. This is less than thirty (30) days from the time that the Unit became legally eligible for sale. This is an accelerated time frame and is more than reasonable. Please provide written assurances by not later than the close of business today that the Seller intends to perform under the Contract and will

convey the Unit by Warranty Deed on or before the 27th against delivery of the balance due of the purchase price as set forth in the Contract. Absent receipt of satisfactory assurances, the Buyer will have no choice but to immediately commence litigation in order to protect his rights.

Finally, I understand that the Seller would like Santini Stone, the Buyer's company, to enter into a new contract for the installation of granite in other units at the project. Santini Stone will, of course, honor the existing contract that it has with the Buyer. Santini Stone is not, however, inclined to enter into a new contract to do more business with the Buyer until all issues relating to the Unit are resolved.

I look forward to hearing from you with the hope that this matter can be resolved without the need for litigation.

Sincerely,

Jennie L. Clegg

JLC/lid

cc: Michael Santini (via telecopy)
Lee H. Bals, Esq.